Wesley v. State.

---

SOL WESLEY ET AL. V. STATE OF NEBRASKA.

FILED JULY 7, 1924. No. 23678.

1. **Criminal Law: JURY: SEPARATION.** On the trial of one charged with murder, the court may in its discretion, during the progress of the trial and before its final submission, permit the jury to separate during the several recesses of the court and go to their respective homes at the close of a day's service in the court, when the jury are properly admonished as provided in section 10150, Comp. St. 1922.

2. **————: CAUTIONARY INSTRUCTION.** "Where no cautionary instruction has been requested with reference to the consideration of the testimony of witnesses employed as detectives, a defendant cannot predicate error because of the trial court's failure to instruct the jury on that point." *Kerr v. State,* 63 Neb. 115.

Wesley v. State.

3. ———:' INSTRUCTION: WITHDRAWAL OF COUNT. On the trial of one charged with murder, the information was in two counts: The first alleged that defendant committed the murder while attempting to commit a robbery; the second alleged the commission of the murder, but made no reference to any attempted robbery. The court on its own motion, at the close of the testimony, withdrew from the consideration of the jury the first count of the information, and submitted the cause on the second count without withdrawing from their consideration evidence which tended to show an attempt to commit a robbery. This evidence being admissible as part of the *res gestæ*, *held*, that the court did not err in failing to withdraw it from the consideration of the jury.

4. ———: NEW TRIAL: NEWLY DISCOVERED EVIDENCE. It is not error for a trial court to deny a motion for a new trial on the ground of alleged newly discovered evidence, when the witnesses offered were all within the jurisdiction of the court, known to the parties, and by the exercise of proper diligence might have been produced upon the trial.

5. Rulings of the trial court on the admission and exclusion of evidence have been examined and found free from error.

6. Evidence as to the guilt of defendant Wesley has been examined, and *held* to support the verdict and judgment.

7. Sentence Reduced. Evidence as to the guilt of defendant Mauldron has been examined, and *held* sufficient to support the verdict, but the sentence is reduced from the death penalty to imprisonment during the term of his natural life.

ERROR to the district court for Douglas county: CHARLES A. GOSS, JUDGE. *Affirmed*: *Sentence reduced as to one defendant.*

*John Adams,* for plaintiffs in erorr.

*O. S. Spillman, Attorney General,* and *Lee Basye, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY and GOOD, JJ.

MORRISSEY, C. J.

Defendants were jointly charged with the murder of one Deerson. Upon trial to a jury, each was found guilty of the crime of murder in the first degree. The jury fixed the

penalty as to each at death. The court pronounced judgment in accordance with the verdict, and each defendant has prosecuted error to this court.

The information filed by the county attorney contained two counts. The first count charged the murder to have been committed while defendants were attempting to rob Deerson; the second count made the charge of murder without any reference to the robbery.

January 20, 1923, one Wrennie Grogan was conducting a grocery store in the city of Omaha. According to the testimony for the state, on that evening the defendants entered Grogan's store, and, after a few moments delay, defendant Wesley drew from his clothing a revolver and directed the grocer and the other persons in the store to throw up their hands. Defendant Mauldron immediately stepped behind the counter and proceeded to take whatever money was then in the cash drawer. Almost simultaneously with these movements by defendants, Mr. Deerson, who was in no way connected with the store but was present merely as a customer, or visitor, undertook to pass out of the front door near which stood defendant Wesley. Wesley thereupon shot Deerson, inflicting a wound from which he, two days later, died.

Defendants fled from the store, but were subsequently apprehended, and, upon the trial, denied any part in the crime charged. However, their identity is so conclusively established that it is not necessary to set out even a synopsis of the proof.

In the motion for new trial and in the petition in error, many assignments of error are made, but they are recapitulated in the brief and we shall endeavor to consider them as they have been grouped in the brief. We are urged to say that it was error for the court, in the face of the seriousness of the crime charged, when there was apparent interracial feeling in the courtroom, to allow the jury to separate during recess of the court, and to go to their respective homes each night during the progress of the trial and before its final submission.

Section 10150, Comp. St. 1922 provides: "When a case is finally submitted to the jury, they must be kept together * * * until they agree upon a verdict or are discharged by the court." But this section leaves the court free to exercise its judgment in permitting the jury to separate during the progress of the trial, requiring, however, that the jury be admonished by the court as to their conduct during the progress of the trial. It is not claimed that the proper admonition was not given; there is no showing of a request that the jury be kept together, or that there appeared any evidence of a hostile feeling for defendants because of their race, or for any other reason. Nor is there anything to indicate that defendants were prejudiced because the jury were permitted to separate and go to their respective homes at the close of a day's service in the courtroom. This assignment cannot be sustained.

A number of policemen and detectives testified as witnesses for the state, and complaint is made because the court did not by its instructions specifically direct the jury as to the weight to be given to this testimony. It is true that in this state the practice permits the giving of such instructions, but in *Kerr v. State,* 63 Neb. 115, it is said: "Where no cautionary instruction has been requested with reference to the consideration of the testimony of witnesses employed as detectives, a defendant cannot predicate error because of the trial court's failure to instruct the jury on that point." In the instant case such request was not made, and the charge as a whole seems to have fairly presented the issues to the jury.

Another assignment suggests that it was error for the court, on its own motion, to withdraw from the consideration of the jury the first count of the information, which charged that defendants murdered Deerson while attempting to rob him, without also withdrawing all evidence relating to robbery. We assume that the court withdrew this charge of the information believing there was not sufficient evidence to show that defendants were attempting to rob Deerson, but rather that the evidence showed defendants

were attempting to rob the grocer.   However, the evidence
was admissible as part of the *res gestæ,* and, therefore, it
was not incumbent upon the court to withdraw it from the
consideration of the jury.

Included in another group of assignments of error we
find one which alleges that the court erred in denying de-
fendants' motion for new trial because of newly discovered
evidence.   The showing on this point consists of a number
of affidavits which, if true, would tend to show that at the
time the crime, with the commission of which defendants
stand charged, was committed, defendants were at a social
gathering in another part of the city.   The statements made
in the affidavits are improbable on their face.   The wit-
nesses were all within the jurisdiction of the court, they
were known to defendants and they might have been pro-
duced at the trial.   Due diligence is not shown, and the
showing is, therefore, utterly insufficient.

Complaint is made of certain rulings of the court on the
admission or exclusion of evidence.   These rulings have
been considered, but it would extend this opinion to an un-
warranted length to discuss them separately.   The rulings
were made in conformity with the well-established rules
governing the admissibility of evidence and they are free
from error.

Finally, we are urged to hold that the evidence is insuffi-
cient to sustain the verdict, and that the punishment is too
severe.   It is sufficient to say that the evidence is so conclu-
sive as to leave no doubt in the mind of any reader thereof
that the crime was committed by defendants as detailed in
an early paragraph of this opinion.   The remaining ques-
tion is as to the severity of the penalty imposed.   As to
defendant Wesley, who fired the fatal shot, there is nothing
to urge in extenuation of his act, and whatever repugnance
the individual may feel toward capital punishment must be
put aside in obedience to the law of the state and in defer-
ence to the verdict of the jury.   The judgment entered
against him is affirmed, and Friday, September 26, 1924,
between the hours of 6 o'clock a. m. and 6 o'clock p. m.

of that day, is fixed as the time for carrying into effect the sentence of the district court.

The case of defendant Mauldron, however, makes a somewhat different appeal. Little of his past is shown, but there is nothing in the record to indicate that prior to the evening when this homicide was committed he had been other than a law-abiding citizen; it was not he, but Wesley, who suggested the commission of a robbery; and, were it not for that wicked suggestion, Mauldron might today be a useful citizen. He is the younger of the two and he was unarmed. Under the provisions of section 10186, Comp. St. 1922, the judgment of the district court is modified to the extent that the penalty imposed is changed from the death penalty to imprisonment for life. As thus modified, the judgment is affirmed.

                                    AFFIRMED AS MODIFIED.

Note—See Criminal Law, 16 C. J., secs. 2164, 2527, 2720; 17 C. J., sec. 3333.